[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**RECEIVED**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

OCT 26 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Ron Morris )
)
)
)
Plaintiff(s), )
)
v. BNSF Railway )
)
)
)
)
Defendant(s). )

**20-cv-06335**
**Judge John Z. Lee**
**Magistrate Judge Beth W. Jantz**

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Ron Morris of the county of Cook in the state of Illinois.

3. The defendant is BNSF Railway, whose street address is 2650 Lou Menk Dr, (city) Ft Worth (county) (state) Texas (ZIP) 76131 (Defendant's telephone number) (800) – 795 2673

4. The plaintiff sought employment or was employed by the defendant at (street address) 3611 W. 38th St (city) Chicago (county) Cook (state) Ill (ZIP code) 60632

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

   (a) ☐ was denied employment by the defendant.

   (b) ☐ was hired and is still employed by the defendant.

   (c) ☑ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month)___4___, (day)_30_, (year)_2013_.

7.1 (*Choose paragraph 7.1 or 7.2, do not complete both.*)

   (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☑*has* ☐*has not* filed a charge or charges against the defendant

     asserting the acts of discrimination indicated in this complaint with any of the

     following government agencies:

     (i) ☑ the United States Equal Employment Opportunity Commission, on or about

       (month)___1$___ (day)_____ (year)_2014_. Approximate date

     (ii) ☐ the Illinois Department of Human Rights, on or about Case related 11S CU02920

       (month)_____ (day)_____ (year)_____.

   (b) If charges *were* filed with an agency indicated above, a copy of the charge is

     attached. ☐ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

   (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)    Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ Yes    ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐    the United States Equal Employment Opportunity Commission has not

issued a *Notice of Right to Sue.*

(b) ☒ the United States Equal Employment Opportunity Commission has issued

a *Notice of Right to Sue*, which was received by the plaintiff on

(month)___1___ (day)__6___ (year)_2015_ a copy of which

*Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

*those that apply*]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☒ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983). No

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]
(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☒ other (specify): denial of Alternative handling

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

by supervisor scott Hendrickson, which was fraudulently denied by defendant to assess harsher discipline. which was termination, this violation of Plaintiffs Contractual rights were approved by Bnsfs Labor Relations Director Andrea N. Smith

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Copy of agreement between Utu and Bnsf railway Court transcripts of scott hendrickson acknowledging that he Provided false information to dismiss Plaintiff Andrea N smiths Declarations Proving complicit with scott Hendricksons fraudulent Misconduct and discrimination of race

14. **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☒ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a)  ☐ Direct the defendant to hire the plaintiff.

(b)  ☐ Direct the defendant to re-employ the plaintiff.

(c)  ☐ Direct the defendant to promote the plaintiff.

(d)  ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e)  ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f)  ☒ Direct the defendant to (specify): The Memorandum of Agreement Alternative Handling is a contract between the utu and the Bnsf Railway, Plaintiff is

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Requesting that this denial that was based on deliberate fraudulent intentions to exhibit racial discrimination against Plaintiff be presented to arbitrator

(g) ☐ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☑ Grant such other relief as the Court may find appropriate.

Ron Morris

(Plaintiff's signature)

Ron Morris

(Plaintiff's name)

19625 S. Lake Park Dr

(Plaintiff's street address)

(City) Lynwood (State) Ill (ZIP) 60411

(Plaintiff's telephone number) ( 773 ) – 709 – 5004

Date: 10/25/2020

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

6

Summary of complaint

Breach of contractual rights per company/union agreement through intentional acts of fraudulent misconduct, and racial discrimination leading to the dismissal of plaintiffs employment with BNSF Railway

Breach of contractual rights per company/union agreement through intentional acts of fraudulent conduct, and acts of racial discrimination leading to the denial of plaintiff being reinstated with the BNSF Railway

The acts of fraud and racial discrimination the defendant exhibited towards plaintiff violates Title VII/42 usc 1981/9usc10/ 9usc11/45usc153(q)

BNSF Railway
Key defendants involved but not limited to

Former Aurora Terminal Superintendent
Scott Hendrickson

Labor Relations Director
Andrea N.Smith

Summary of facts.

1.)Plaintiff Ron Morris began employment as a conductor with The BNSF Railway in 2004.

2.)During his years of service between 2004-2011 the plaintiff had a clean work history, and no infractions on his discipline record.

3.)Late 2010 Scott Hendrickson became Terminal Superintendent Of Aurora, the same location the plaintiff had worked.

4.)During Scott Hendricksons tenure as a company official in Aurora 2010-2013, blacks supervised by Mr.Hendrickson were disciplined more excessively than the white employees for committing similar offenses, blacks were usually dismissed from employment as the whites were not.

5.)Blacks who've worked in Aurora during Mr. Hendricksons time as supervisor were routinely denied alternative handling, even for minor (attendance) offenses, however the white employees were given alternative handling regardless of the severity of the rules violation, which includes incidents that could lead to the dismissal if alternative handling were denied.

6.)During Scott Hendricksons tenure, the plaintiff had also began to receive discipline for minor(attendance)offenses, and was routinely denied alternative handling, Mr.Hendrickson had

a history of deliberately disregarding the plaintiffs eligibility, and knowingly violating his rights to receive it, in accordance to the policy agreement between the company and the union.

7.)One particular instance stemmed from a situation when the plaintiff had to take off of work to address a legal matter due to a drivers license mixup between the courts, and the Secretary Of State, in which the plaintiff had provided Mr.Hendrickson with legal documentation, and a court notice to appear issued to the plaintiff which clearly stated the failure to attend would result in liscense of the plaintiff being revoked, and a warrant would be issued for his arrest, yet despite Mr. Hendrickson being aware of the legal consequences the plaintiff faced if he had failed to address these legal matters, a notice to attend a disciplinary hearing had been issued to the plaintiff, alternative handling was requested for the plaintiff by the union rep which was subsequently denied, again there was nothing in the Memorandum of agreement listed that would've denied, or disqualified the plaintiff his elected option to receiving alternative handling.

8.)During that disciplinary hearing Paul Eason the manager who testified as a company witness upon reviewing legal documents presented by the plaintiff had openly stated on record that the plaintiff's absence was justified, the plaintiff was obligated to address his legal matter, and taking off work to handle an unavoidable issue was the right thing for the plaintiff to do, though discipline was still assessed by Scott Hendrickson.

This infraction was appealed.
PLB 7331 Award 301 legal documents presented by the plaintiff at the discipline hearing were also to be used as the exhibits as part of the appeal.

9.)Employees who are denied alternative handling are subject to attend a disciplinary hearing which often result in harsher discipline assessed to the employee, including the termination of employment for serious rule violations.

10.)In the discrimination case of Ron Morris v.BNSF Railway work records provided to the court by the defendants detailing the rules violation committed by black employees, and white employees supports the fact that discipline was often applied more excessively and also disproportionately to the black employees for violations of the rules that should've received equal reprimands as their white counterparts, the white employees have routinely maintained employment with the company, these decisions were ultimately made by The Labor Relations Director/P.E.P.A Team Leader Andrea N.Smith, based on the new arguments presented by the defendants during trial.

11.) In his declaration provided to the court Scott Hendrickson acknowledged that any act of workplace discrimination was prohibited by law, and violated company policy.

12.) During the trial Mr. Hendrickson would further acknowledge that he was aware that employment discrimination was illegal, and a violation of federal law.

13.) Prior to dismissal, the plaintiff was denied alternative handling by Mr. Hendrickson based

on fraudulent reasons that weren't applicable to the guidelines of the alternative handling policy.

14.) The alleged reasons Mr.Hendrickson had claimed he denied alternative handling to plaintiff were.

A.) The plaintiff did not accept responsibility.

B.) The rules violated the BNSFs' critical work practices.

15.)Both of these alleged reasons that Mr. Hendrickson initially gave as his reasons for denying plaintiff alternative handling he admitted to be unfounded during trial.

16.) Alternative Handling is a contractual right for unionized employees, based on the Memorandum Of Agreement between the BNSF Railway, and the UTU, which it clearly states in this policy that alternative handling if requested by employee WILL BE MADE AVAILABLE for all type of rules violations.

The Memorandum of Agreement is also regarded as policy under The Collective Bargaining Agreement.

17.) In his declaration Scott Hendrickson stated that the factors outlined in the Memorandum Of Agreement between the BNSF Railway and The UTU, were used to consider to determine whether plaintiff were eligible for alternative handling.

18.) During the trial the Scott Hendricksons dispute whether plaintiff qualified for alternative handling did not involve those terms listed in the Memorandum of the agreement.

19.)There are seven categories that ultimately determines if an employee is ineligible to receive alternative handling, though none of those categories applied to the plaintiff, which undermines the claim made by the defendants of whether the plaintiff were qualified to receive alternative handling.

20.) The fact that Scott Hendrickson denied plaintiff his contractual rights to receive alternative handling were based on fictitious reasons, giving plaintiff no option but to attend a disciplinary hearing resulting in dismissal, also issued by Scott Hendrickson, which proves reason for dismissal was premeditated, and also proof of his actions were the result of racial bias, and discriminatory animosity.

21.) During the trial Scott Hendrickson admitted that plaintiff did accept responsibility by requesting alternative handling.

22.) During the trial Mr. Hendrickson admitted that he was unable to find any policy detailing the BNSFs' critical work practices, nor was he able provide any evidence to confirm the policy ever existed.

23.) In his declaration provided to the courts Scott Hendrickson acknowledges that he is the supervisor that handles alternative handling requests.

24.) During the trial Hendrickson admitted he had the ability to approve alternative handling.

25.) He also acknowledged in his declaration that he's responsible for issuing discipline to employees, although during trial this narrative changed, and the defendants attorney later argued that Labor Relations Director Andrea N.Smith was just as much involved in dismissing the plaintiff as Mr. Hendrickson.

26.) The BNSF has a code of conduct policy that applies to salaried employees which prohibits intimidation, retaliation, and fraudulent conduct.

27.) The BNSF has a code of conduct policy which defines fraud as a violation of intentionally misrepresenting the truth for the purpose of deceiving another to obtain personal, or organizational gains, which additionally states that if any employee having knowledge of another coworkers fraudulent behavior, and takes no action to end it is subject to discipline, including termination of employment.

28.) Fraud was committed by Mr. Hendrickson when he stated plaintiff had violated a policy that didn't exist for the purpose of denying alternative handling to issue dismissal as discipline.

29.) The reasons for Scott Hendrickson denying the plaintiff alternative handling were proven to be pretextual during trial, in addition there was factual evidence that supports BNSFs' Labor Relations Director Andrea N.Smith was knowingly complicit, and also conspired against the plaintiff to deny alternative handling, by means of fraudulent conduct, motivated by racial discrimination leading to the dismissal of the plaintiff of his employment with the BNSF Railway.

30.) Andrea N.Smith deliberately disregarded the fact that plaintiff was fraudulently denied alternative handling, which according to the Memorandum of Agreement policy, between the BNSF Railway, and the UTU is a violation of plaintiffs contractual right.

31.) Andrea N.Smith had acknowledged in her declaration provided to the courts that she was familiar with the companies employee policies, by her admitting to this supports the facts that she was complicit in the fraudulent act to deny plaintiffs request of alternative handling, based on the defendants code of conduct policy this was a blatant disregard of her role, and of her responsibility was to intervene, and prevent the acts of misconduct, and discrimination Scott Hendrickson had exhibited when he denied alternative handling to plaintiff, though again she was a willing participant who was directly involved in these violations of the plaintiffs contractual rights, as she had given the authorization to Mr. Hendrickson to dismiss the plaintiff.

32.) The Memorandum of Agreement is one of the primary train service policie in regards to discipline of employees.

33.) She explained her duties in her declaration which she recommended, and authorized discipline of suspensions, and dismissals of employees, she further explained that it was her role to ensure that the discipline assessed to all employees was consistent within company policy systemwide.

34.) During discovery in the discrimination case of Ron Morris v.BNSF Railway, the defendants attorney refused to turn over documents with information regarding Andrea N.Smith to plaintiff, ignoring court order to do so, a complaint was filed with the ARDC, in an attempt to get defendants to comply, however those documents were never provided, resulting in information of the role that which she were involved in the discrimination case being limited until the defendants changed the narrative of their argument during trial, as they tried to present her as a new witness, by arguing that she was just as responsible for the discriminatory discipline of the plaintiff as was The Terminal Superintendent Of Aurora Scott Hendrickson.

35.) She stated in her declaration presented to the courts, she had never met the plaintiff, and that she did not know the race of the plaintiff.

36.) However during discovery documents were provided to dispute her claims of not knowing the race of plaintiff, when the defendant presented interrogatories to the plaintiff a list of BNSF Employee records which specified the rules that had been violated, the race of the employee, and the discipline that was assessed, being one of the senior managers for the company this information would be available to Andrea Smith, as she has also stated in a letter of an email presented at trial that she had reviewed the plaintiffs record which provides detailed information about the plaintiff including information about plaintiffs race, in which she acknowledged that her review of plaintiffs record had led her to making a decision to dismiss him.

37.) She also stated in her declaration she had reviewed the investigation transcripts, and the exhibits of the investigation,which
detailed an objection made by the Local Chairman of the UTU, R.T. Harwood that raised the issue of plaintiff being denied his request of alternative handling based on a critical work practice policy that has never existed in any of the BNSFs' rules or guidelines, again this was acknowledged through testimony of Scott Hendrickson during trial.

38.) In both her email, and in her declaration presented to the courts Andrea N.Smith had acknowledged that she reviewed the investigation transcripts which states that alternative handling was requested by the plaintiff, those transcripts detailed the reasons for denying the plaintiffs right to receive alternative handling, however those reasons were later confirmed to be fabricated through the testimony of Scott Hendrickson during the trial.

39.) Andrea N.Smiths intent to disregard the company discipline hearing testimony of Engineer Jerome Jones, who was the Coworker of the plaintiff involved in the incident also supports the evidence that dismissal was part of her agenda motivated by racial bias, Mr. Jones had provided several written incident report statements addressing the train speeding violations to

company officials before attending a disciplinary hearing, which detailed his medical condition of recently being diagnosed with diabetes, and high blood pressure, and forgetting to take his medication before going to work, he also stated that he became sick while on duty, as a result of his failing to taking his medication, in addition he also notified management that he did not inform the plaintiff of his condition, which he had also stated adversely impaired the way he operated the train, Mr.Jones was indirectly admitting to being at fault of the violation.

40.) The hearing officer conducting the investigation Manager Donald Russell sent his suggested recommendation of probation for the plaintiff, which was based on plaintiffs fairly clean work record, and that Mr. Jones be dismissed, as a result of the investigation, in a email addressed to Andrea N.Smith, though she had disregarded Donald Russell's request of probation for the plaintiff, and given Scott Hendrickson the authority to dismiss the plaintiff.

41.) There were records provided in discovery of evidence showing that Black coworkers were being disciplined more severely than the White coworkers for committing the same violation, and several of these violations committed by the White coworkers were far worse, and more atrocious, than the violations committed by Black coworkers, although discipline disproportionately resulting in dismissal for the Black coworkers based on the decisions made by Andrea N.Smith, including dismissal of plaintiffs, this information was presented as the defendants new argument during trial.

42.) This is additional evidence that Andrea N.Smith was complicit, and involved in the fraudulent misconduct, as well as the racially motivated discrimination, just as much as Scott Hendrickson.

43.) After the plaintiff was dismissed, during the plaintiff's arbitration appeal process, Andrea N.Smith attended two hearings in opposition of plaintiff's appeals, plaintiff had attended one of the hearings, and had personally met Andrea N.Smith at that hearing, this is another fact which directly undermines the statements that she had made in her declaration in which she had provided to the courts when she claimed that she had never met plaintiff, and not knowing the race of plaintiff.

44.)Both outcomes of those appeals were in the favor of the company though highly suspect, due to lack of transparency, the fraudulent conduct by the attendee Andrea N.Smith, including racially biased motives, as was recently proven in court, the information she purposely withheld from arbitrator, to prejudice, and influence the arbitrators decision, the fraudulent misconduct by Andrea N. Smith as a participant of those hearings played a very significant part in the outcome of the rulings in favor of the company.

45.) In 2015 Andrea N.Smith, had spoken with plaintiff several times to notify him that his discipline record was corrected, as she had removed the infraction that was successfully appealed in 2012, though deliberately kept on plaintiffs record for the purpose of using against him in future discipline decisions, including both employment, and during arbitration, after plaintiff was dismissed.

46.)During one of the multiple phone conversations held with Andrea N.Smith, the plaintiff inquired about the appeal regarding the questionable outcome PLB 7331 Award 301 that was ruled in favor of the defendant, she stated to the plaintiff that she had no knowledge of what happened during that appeal process.

47.)The plaintiff was unsuccessful getting any information about the public law board hearing 7331 Award 301, detailing his appeal from the Labor Relations Director in regards to the reasons that led to the arbitrators decision ruling in favor of the company, this led to the plaintiff reaching out to the Arbitrator Barry Simon who had handled the plaintiffs appeal, after leaving a detailed phone message he was then contacted by arbitrator a few days later, at which time the arbitrator had notified the plaintiff that he did not know why he'd ruled in favor of the defendant.

48.) However it was during the ongoing discrimination case where , it was then later discovered that Andrea N.Smith had actually participated in both of the public lawboard hearings 7331 award 301, and as well as public lawboard hearing 7527 award 48 as a carrier member, this fact undermines her claim that she had no knowledge, or involvement, and proved that she had purposely given plaintiff false, and misleading information about hearing in which she appeared in opposition of the plaintiff getting infraction removed from his discipline record, in which the successful appeal,.is grounds for the removal of that infraction from plaintiffs record, and would've also resulted in reinstatement for the plaintiff.

49.)Per agreement Between the Union and the BNSF Railway, this infraction should have been removed before plaintiff was dismissed, though remained on his record until after the arbitrator had ruled on the plaintiffs appeal of dismissal.

50.) Although the defendant had made reference to the plaintiffs arbitration throughout the court proceedings, they purposely navigated around Andrea N.Smiths' role, and her involvement at either of the hearings, the plaintiff had appealed, which became obvious that the defendants were trying to be careful, and avoid exposing her fraudulent conduct, as a participant, as well as her exposing her racially discriminatory bias against the plaintiff.

51.) The defendant had purposely delayed removing this infraction which was properly appealed by the union, and to be removed from the plaintiffs record 30 days after the company default to respond to the appeal, the censure being kept on plaintiffs record long after it should've been removed was used to impact the plaintiffs employment with company, and subsequently the ruling in the arbitration for plaintiffs employment reinstatement.

52.)This was also a deliberate violation of the plaintiffs contractual rights by the defendants, further supports the substantial amounts of evidence that proves these were racially motivated acts to sabotage plaintiffs career with the company were orchestrated, and by design.

53.)Per union agreement with the BNSF they must respond to appeals within 60 days of the received appeal in which the company had failed to respond to the terms of the agreement, that

requires the removal of the infraction from the work record of the plaintiff, and to be removed in 30 days after the failure of responding to the appeal of the union member, this had remained on plaintiffs record almost 3 years to justify dismissal of employment and to prevent reinstatement resulting from arbitration.

54.)In his declaration Scott Hendrickson stated that he determined discipline to be assessed based on plaintiffs record.

55.) In a response to email regarding discipline to plaintiff Andrea N.Smith had also stated that she determined the discipline of dismissal after reviewing record of plaintiff.

56.) Ironically After the plaintiff had been dismissed the UTU Rep R.T. Harwood had appealed the dismissal to BNSFs' General Manager of Chicago Jason Jenkins, who responded that one of the determining factors why the dismissal of plaintiff was not overturned was his evaluation of the plaintiff's employee discipline record.

57.) These decisions were based on the plaintiff's flawed discipline record which management was aware of, The BNSFs' Management had intentionally delayed removing an infraction from plaintiffs record that had been successfully appealed, as General Manager of Chicago Jason Jenkins had confirmed in letter to the plaintiff, the appeal of that particular infraction to be removed was properly handled by UTU Rep and Local Chairman R.T. Harwood.

58.) General Manager of Chicago Division
Jason Jenkins also acknowledges in a response to the union reps letter appealing plaintiff's dismissal, and the denial of alternative handling which states in order for an employee to qualify for alternative handling he, or she must be willing to accept responsibility for the violation, but acknowledges requesting alternative handling is accepting responsibility, but yet refused to overturn decision.

59.) During the jury trial BNSF Former Supt of Aurora Scott Hendrickson had finally admitted that he was not able to present proof, or point to a policy called the BNSFs' critical work practices, which was used to justify denying alternative handling which is provided to employees that qualify for it, in order to avoid further discipline.

60.) During trial he also acknowledged that plaintiff did accept responsibility by requesting alternative handling, although prior to the trial scott hendrickson had denied plaintiff accepted responsibility.

61.) The fact that Andrea N.Smith had acknowledged that she had reviewed the investigation transcripts, including the exhibits, in which detailed the fabricated reason to why the plaintiff was denied alternative handling, and acknowledging being familiar with employment policy is a self admittance to being complicit, and involved in the fraudulent misconduct, and racial discrimination, based on the newly revealed information that was presented at trial through the testimony of the defendant, the outcome of the trial, and additional information provided during

the trial.

62.) As a result of the new information, and in addition the outcome of the trial in favor of the plaintiff, this case should be tolled, from the day of the verdict made in favor of plaintiff ,and this complaint should be reheard by an arbitrator, based on both fraud, and racial discrimination by both Scott Hendrickson, and Andrea N.Smith stemming from evidence, and arguments made during the trial by defendants, this evidence supports the facts that both have conspired to unfairly discipline, and dismiss plaintiff, which was proven to be racially motivated.

Plaintiff request remedy, and relief are sought through the courts by way of rearbitration.

Plaintiff is looking to overturn fraudulent unlawful discipline, through an arbitrator for the denial of alternative handling,
 as it is listed in the The Memorandum Of Agreement, a contractual right between The UTU , and the BNSF, this was based on intentional fraudulent reasons for the sole purpose of issuing dismissal based on discriminatory reasons, of Scott Hendrickson, and Andrea N.Smith who was presented by the defendants during trial to have played a significant role in the discriminatory discipline resulting in the dismissal of plaintiffs career with the company, it was also later discovered that Andrea N.Smith was a participant of several appeals of plaintiffs, as she appeared in opposition of the plaintiffs reinstatement back to employment.

There's substantial evidence that Andrea N.Smith not only intentionally acted to hinder the efforts of the plaintiff to appeal his employment dismissal, again there's evidence to support she were aware of the plaintiffs race, her role in the discipline that led plaintiff being dismissed, and subsequently being denied reinstatement, is conduct consistent with fraud, and race discrimination.

And because of her involvement which was motivated by racial bias, additionally presented a conflict of interest, during the appeal process, I look to challenge both appeals she were involved in.

PLB 7527 Award #48
Rearbitrate to change dismissal to alternative handling in addition to
awarding all time lost railroad retirement current, and seniority unimpaired, as if alternative handling were initially granted when requested by plaintiff.

PLB 7331 Award #301
Looking to impeach, and challenge the validation of the award due to the lack of transparency throughout the process, the  plaintiff was never shown evidence, or any exhibits, the arbitrator alledges to have based his decision on, as its stated in the award letter, the circumstances in which the award was procured is highly suspect as the reason for the why the ruling was in favor of the defendant was never given, which currently remains unexplained by the participants who were actually involved, and in attendance of the hearing.

The plaintiff is looking to challenge both awards through means of rearbitration due to deliberate acts that were complicit and evident of conspiracy, and addition to the fraudulent misconduct, and racial discrimination being exhibited by BNSFs Labor Relations Director Andrea N.Smith, who not only was aware that Scott Hendrickson showed this type of fraudulent, and discriminatory behavior and yet she took no action to prevent it, as she also was involved in this behavior with him, she was also a participant in both PLB hearings as listed.

Based on the acknowledgement of the BNSFs' key witness Scott Hendrickson testimony at trial admitting to falsifying information, and being found guilty as a result the verdict of a jury trial, when he denied plaintiff alternative handling, for the purpose of intentionally causing harm, mental distress, financial instability, and financial ruin upon plaintiff, based on the race of the plaintiff.

Ron Morris

773 709 5004

19625 S. Lake Park Dr
Lynwood, Ill 60411